*LUDELING* vs. *HIS CREDITORS.*

APPEAL from the court of the fourth district.

PORTER, J., delivered the opinion of the court. This case is presented on an assignment of errors.

Opposition to a tableau of distribution, must be made in writing.

The syndics of the insolvent filed the tableau of distribution, and gave public notice in writing to the creditors of the estate, to show cause, on the second day of the term of the court ensuing, that at which the order was granted, why the said tableau should not be confirmed.

East'n. District,
June, 1826.
⁓⁓⁓
LUDELING
vs.
HIS CREDITORS

No opposition in writing was filed, at the time mentioned in the notice; but the case being called on a subsequent day, several of the creditors appeared and objected orally to the correctness of the tableau. Their right to do so was contested, but the court received their opposition and the proofs offered, and gave judgment, by which the amount to be paid some creditors, and the order and rank in which others should be paid, were different from that given in the tableau of distribution.

The legality of that proceeding has been contested before us, and we think there cannot be a doubt of its irregularity.

If the question were to be decided by the particular provisions of our law, on the subject of surrenders, it would be too plain for argument. The act of 1817 requires, that after the tableau of distribution has been placed in court by the syndics, any creditors who object to it, *shall file* their opposition in the clerk's office. A compliance with this provision, necessarily requires, the opposition should be made in writing. *Acts of* 1817, *p.* 142, *sect.* 136 *and* 137.

But it is contended, these proceedings

commenced by an application for a forced surrender; that by the rules of the Spanish law, this opposition might be made orally. If these rules were found to contain any thing different from our present regulations on this point, it might be made a question, and a serious one too, whether the repeal of the law, giving that remedy previous to the final homologation of the proceedings, did not deprive the court of the power to pursue any longer the forms which it prescribes. It might perhaps be urged, that as the legislature have the complete control over remedies, no right *can be vested* in any one to use them longer than they are permitted to remain in force, and that the circumstance of proceedings being commenced under them, cannot enable the party to continue to act under their authority, after they have ceased to exist. Our understanding, however, of the ancient laws of the country, precludes the necessity of examining this question.

Before we go into the consideration of the mode, in which the pleadings in a cause were permitted in the Spanish courts, and the *contestatio litis* formed, it is proper to consider the nature of the action in which this contest has

East'n. District.
*June*, 1826.

LUDELING
*vs.*
HIS CREDITORS

East'n. District. arisen, and the situation of the parties to it.
June, 1826.
It is that known to the laws of Spain by the
Ludeling
vs.
appellation of *juicio de concurso*, and it differs
his creditors from every other in this important particular,
that all the parties to it, except the insolvent,
are at once plaintiffs, and defendants.   Each
creditor is plaintiff against the failing debtor,
to recover the amount due by him, and against
the co-creditors to diminish the amount they
demand from the estate ; and each is of neces-
sity defendant, against the opposition made
by the other creditors against his demand.
From the peculiar situation, in which the
parties are thus placed, many distinct and
separate suits, arise, and are decided during
the pendency of the main one by the insol-
vent, in which they originate.   But this pecu-
liarity in the mode of litigating the matters in
dispute between those persons to whom the
bankrupt is indebted, works no change in the
necessity of the proceedings being conducted
in conformity with those fundamental princi-
ples which govern all suits tried in a court of
justice.   In every separate judgment which
may be pronounced, there must be both *actor,
et reus ;*  the *contestatio litis* must be formed ; and
the parties, unless they make default, must be

heard. These are essential requisites to every judgment, in every country, and in every case: without them, no decree can be validly pronounced, and which would not, if these facts were disclosed, on the face of it, import nullity.

If we leave this ground, which is not only supported by positive law, but has its origin in the nature of things, and the first principles of justice, and look into the expediency of the rule in relation to causes such as that before us, no case can be imagined which calls more emphatically for a strict observance of it. Each of the creditors finds himself thrown into court, with most frequently, a number of other persons, all in pursuit of the same object as himself. He knows that he must prove in the first instance his claim against the insolvent's estate, and he comes prepared to do so. This proof once made, is so generally acquiesced in, that it is rare the party making it prepares himself to prove his debt again, unless warned to do so, by the opposition filed by some other creditor. No case, then, can be imagined where is greater necessity that he should be informed by the pleadings, of the necessity of producing his proofs. It is

LUDELING
vs.
HIS CREDITORS

essential to guard against surprise, and to prevent confusion among so many litigants.

From these considerations, we are perfectly clear, the *litis contestatio* must be formed among the creditors, before the court can pronounce judgment on the force of their respective claims, as against each other. It only remains to inquire, if it was formed in this case.

The appellees contend it was, because the creditors who considered themselves aggrieved by the tableau, made opposition orally in open court to the homologation; but to this position we can by no means assent. Leaving out of view the knowledge we have of the practice in the Spanish courts, from those proceedings which have passed under our examination, where not only the pleadings, but the proof was reduced to writing, and every thing done or said put on the record with a painful minuteness, we have only to recur to the statutes of that country to be satisfied how unsupported they leave the proceedings which took place here. By the laws of the *Partidas*, pleadings in court were directed to be in writing, even in the illiterate state of society, existing when that work was promulgated. *Partida* 3, *tit.* 2, *law* 41.

A subsequent law of the *Recopilacion* permitted them to be made verbally; but Febrero tells us it was not in use, and that pleadings must be in writing, according to another provision found in the same work.  *Febrero, p. 2, lib. 3, cap.* 1, §2, *no.* 30.

But were we even to admit that suits could have been carried on, and issue joined by oral allegations, in the Spanish courts, the proceedings in this case would still be irregular. The laws establishing the practice in our tribunals, require the petition and answer to be in writing, and it has not even been pretended since the establishment of our government in Louisiana, that actions could be commenced, or conducted, in any other way but by written allegations.

We have already seen, that on general principles, this case formed no exception to the ordinary rules.  An examination of the authors who treat professedly of this judgment, leads us to the same result.  Febrero, after observing that all the parties to the *concurso* are plaintiffs and defendants, states, *that copies of what each allege* or pretend, should be given to the opposite party; and, that if their papers are returned without answer, he

East'n. District. who returns them shall be considered in de-
*June*, 1826. fault, and proceedings shall then be had as in
LUDELING an ordinary suit. *Febrero, lib.* 3, *cap.* 3, § 1,
*vs.*
HIS CREDITORS *no.* 29.

The same author tells us, that the sentence of gradation, or in our legal phraseology, the decree which settles the rank and order in which each creditor should be paid, does not affect the rights of those who were not cited, and ignorant of the proceedings; but if those who were cited consent expressly, or *remain silent*, the decision has the authority of the thing judged. This is almost the case before us, and it is precisely that of which the appellants complain; that although no opposition was made against the tableau, (for a verbal opposition is the same as none) the court went into an examination of the case on the merits, and did not give to the tableau, as filed, the authority of *res judicata*. It is somewhat difficult to ascertain from the Spanish books of practice, whether the sentence of gradation, *sentencia de graduacion*, was made on a tableau filed by the syndics, or settled in the first instance by the judge, after calling the parties before him. We incline to think the latter was the ordinary mode. But whe-

ther it was or not the principle on which the affirmation of the decree was made, namely, want of opposition is the same. It makes no difference whether the judge tells the creditor, you shall be paid according to the order and rank which I have given you, and if you do not make opposition or show cause against this decree it will become final, or the syndics calling on the creditors to show cause why the gradation which they have given to each of them shall not be confirmed, and become the judgment of the court. The consent which is inferred from their silence is as strong in one case as the other, and the consequences must, in our opinion, be the same.

The respect which this court feels for that first principle of justice, that no man should be condemned unheard, unless he chooses to be so, by refusing or neglecting the right which the law gives him, calls, in the instance before us, for a reversal of the judgment of the inferior court. The syndics filed a tableau of distribution, and gave notice to all the creditors who were not satisfied with the classification there made of their claims, to appear on or before a particular time and oppose it. This opposition was not made in

writing, nor even verbally until the moment the tableau was called up for homalogation. Those who were satisfied with the amount given and rank assigned them, had no occasion, nor could they have conceived it necessary to be ready to support their pretensions, as they were not informed by the pleadings that their claims were contested. A judgment then which passed on these claims, to their prejudice, is well assigned as error, if pronounced without issue joined, and decided on the rights of parties who were not in default, without hearing them. In any case this would be bad, it is more particularly so after the presumption raised by the tableau, acknowledging their debts, and assigning them a rank in which they should be paid.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed; and it is further ordered, adjudged, and decreed, that the tableau of distribution, filed by the syndics, be, and the same is hereby homologated, the costs of the appeal to be paid by the appellees.

*Seghers* for the plaintiffs.